UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ANN WAGENFUHR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-11-135 |
| | § | |
| BP PRODUCTS NORTH AMERICA, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION**

Plaintiff Ann Wagenfuhr worked at Defendant BP Products North America, Inc.'s Texas City Refinery from 1993 to 2010. In 2010, when Wagenfuhr was sixty-seven years old, BP eliminated her contract position in order to fill the position with a new BP employee. Wagenfuhr applied for the new position, but BP instead hired a fifty-year-old man, Brian Rawls.

Wagenfuhr brings suit under Texas law alleging that BP's failure to hire her was impermissibly motivated by age discrimination.[1] BP has filed a motion for summary judgment in which it argues both that Wagenfuhr was not qualified for the new position and that, even if she had been qualified, Rawls was the most qualified applicant. This Court has considered the parties' arguments, the

---

[1] Wagenfuhr originally brought claims for both age and sex discrimination. Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 2, ¶ 1.2. However, Wagenfuhr voluntarily dismissed the sex discrimination claim in her response to BP's motion for summary judgment. *Id.* 1 & n.1.

applicable authorities, and the facts of the case, and **GRANTS** BP's Motion for Summary Judgment.

## I.     FACTUAL BACKGROUND

Wagenfuhr worked as a material coordinator in the warehouse at the Texas City Refinery for seventeen years.[2] For the first twelve of those years, from 1993 to 2005, she was a full-time employee, first of BP's predecessor, Amoco, and then of BP itself.  Except for several months in 1993, Wagenfuhr's duties during this entire time were to manage the warehouse's inventory of certain "stock items" by ensuring that the stock items were on the shelf and reordering those that were not. The stock items included a variety of minor machinery parts and other objects. Wagenfuhr performed her duties using an inventory software program known as SAP, a program that automatically purchased items from previously designated vendors whenever she entered orders in the system.  Wagenfuhr was responsible for making limited independent decisions concerning whether certain items were no longer being used and could be removed from the Warehouse's inventory.  Her job did not require any independent analysis of vendor quality or item pricing.

In 2005, BP decided to outsource Wagenfuhr's position to a contractor, Fluor.  At that time, Wagenfuhr received assurances from her supervisor, Nancy

---

[2] There is some uncertainty regarding whether Wagenfuhr's job title changed over the years.  For simplicity's sake, this Court will refer to her job title as "material coordinator" except where the uncertainty over her title is relevant to the legal issues.

Roberson, that she would be selected as the contract employee if she retired from BP. Wagenfuhr retired from BP in April 2005, and was indeed hired in her old position by the contractor in July 2005. Wagenfuhr did not have to interview for the job, and Roberson remained her supervisor even after Wagenfuhr became a contract employee.

In late 2009, BP decided to bring Wagenfuhr's contract employee position back in-house. By then, Kenneth Panozzo, who became BP's manager of maintenance services in July 2009, had discovered a number of problems with the warehouse's management and administration. Notably, Panozzo discovered that the warehouse improperly contained approximately $25 million of extra inventory, 80% of which was not being utilized, and that Fluor was charging a 92% markup for contracted work such as that performed by Wagenfuhr. Panozzo replaced the Warehouse's management, including Wagenfuhr's supervisor, Roberson, and appointed John Carrillo as the new warehouse superintendent in November 2009. As part of a larger move away from using Fluor's contract employees, Panozzo and Carrillo decided to eliminate Wagenfuhr's contract employee position and create a "material analyst" position that would be filled by a new, full-time BP employee. BP states that, due to the inventory problems that had occurred, it required the material analyst position to entail more analytical work and independent research than had the old material coordinator position.

In December 2009, Wagenfuhr discovered the plan to eliminate her contract position. She wrote an e-mail to Carrillo asking why her old position was to be bid out and voicing her concern that BP had already determined not to hire her for the new position. Carrillo e-mailed one of BP's Human Resources employees to confirm that Wagenfuhr could not be offered the new position without going through a new application and bidding process. He was informed that Wagenfuhr would indeed have to apply but that "she is welcome to apply and we will consider her application." Carrillo met with Wagenfuhr and Roberson the next day, told Wagenfuhr that the position was to be filled with a full-time employee of BP, and followed up the conversation with an e-mail relaying the message that Wagenfuhr was welcome to apply and would be considered for the position. Carrillo had not met Wagenfuhr before the meeting and was not personally familiar with her qualifications.

In January 2010, BP publicly posted the new position, and Wagenfuhr applied as one of 186 total applicants. BP's Human Resources Department conducted an initial screening of the applicant pool and e-mailed the names of seven applicants to Carrillo. In the e-mail, five of the applicants, one of whom was Wagenfuhr, were listed as "Yes" candidates, while two were listed as back-up "Maybe" candidates. Carrillo then chose to interview Wagenfuhr and three of the other "Yes" candidates. Wagenfuhr's interview took place in February 2010, but

she was not hired for the position. Defendant instead hired a fifty-year-old man, Rawls. This suit followed.

## II. STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III. DISCUSSION

### A. *The* McDonnell Douglas *Framework*

Wagenfuhr alleges that BP violated the Texas Commission on Human Rights Act by refusing to hire her because of her age. *See* Tex. Labor Code Ann. § 21.051 (Vernon 2010). Texas courts generally apply federal case law to interpret the mandates of Texas antidiscrimination law, *see AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008), because the operative provision of the Texas Labor Code "is substantively identical to" Title VII and the federal Age Discrimination in Employment Act. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 475 & n.2

(Tex. 2001).

Wagenfuhr provides no direct evidence of discrimination. Thus, the familiar pretext framework laid out by the line of cases beginning with *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), controls this Court's determination whether circumstantial evidence creates a fact issue concerning discrimination. BP contends that Wagenfuhr was not hired for the legitimate reason that it hired the most qualified applicant, while Wagenfuhr alleges that BP actually refused to hire her because of her age.

The pretext framework first requires that Wagenfuhr establish a prima facie case of age discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citations omitted). If she can do so, a presumption of discrimination is created, and the burden of production shifts to BP. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). BP may then fulfill its burden of production by producing evidence that, "if believed by the trier of fact," would show "that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citation and emphasis omitted). Finally, with the presumption of discrimination rebutted, Wagenfuhr may defeat summary judgment by producing evidence that raises a genuine issue as to whether BP's stated reason for taking the adverse employment action was false and thus a mere pretext for discrimination.

*Reeves*, 530 U.S. at 142–43 (citations omitted).  The standard of causation a plaintiff must meet under Texas law is that discrimination was "a motivating factor" in the employer's decision.  Tex. Labor Code Ann. § 21.125(a) (Vernon 2010); *see Toennies*, 47 S.W.3d at 480.

### B. *Analysis*

To establish a prima facie case of age discrimination, Wagenfuhr must show (1) that she was at least forty years of age at the time BP refused to hire her; (2) that she was qualified for the position; (3) that she was not selected; and (4) that the person ultimately hired was someone outside the protected class or someone younger than her, or that she was otherwise not selected because of her age.  *See McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 462 & n.5 (5th Cir. 2005).  BP only contests the second factor—whether or not Wagenfuhr was qualified for BP's new material analyst position.  Both parties spill much ink debating Wagenfuhr's qualifications.  However, because BP ultimately prevails on other grounds, this Court assumes without deciding that the evidence creates a genuine issue of material fact on the qualification issue.

Even if Wagenfuhr was qualified and can establish her prima facie case, BP easily meets its burden to produce evidence that could rebut that case.  BP states that the individual it hired, Rawls, was the most qualified applicant.  Courts have repeatedly held that hiring a more qualified applicant is a legitimate,

nondiscriminatory reason for not hiring a particular, less qualified applicant. *See, e.g.*, *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881–82 (5th Cir. 2003); *Price v. Fed. Express Corp.*, 283 F.3d 715, 720–21 (5th Cir. 2002). BP has produced an affidavit from Carrillo stating that Rawls had thirty years of experience in materials management, ten of which were served in a supervisory capacity, that Rawls had experience in inventory management analysis and in managing obsolete inventory, and that Rawls had developed materials management plans and completed inventory audits for his previous employer. Carrillo's affidavit also states that Rawls had experience working with MRP (materials requirement planning) methodology, the working knowledge of which was a stated key requirement of the position.

BP contrasts Rawls's qualifications with Wagenfuhr's by claiming that Wagenfuhr's qualifications were limited to her seventeen years in a coordination position that did not involve the analysis-intensive work that Rawls had done. BP additionally points to Wagenfuhr's deposition testimony stating she did not know what MRP methodology was or whether she had used it in her old job.[3] Finally,

---

[3] Since her deposition, Wagenfuhr has submitted an affidavit claiming that she does in fact understand MRP methodology, and that she was merely unfamiliar with the term "MRP" at the time of her deposition. BP has moved to strike this new statement on the ground that it impeaches her deposition testimony. Because the Court assumes Wagenfuhr is qualified and makes out a prima facie case, this claim of contradictory testimony need not be resolved. In asserting the nondiscriminatory reason that Rawls was the most qualified candidate, BP need only point to evidence that would allow the trier of fact to reach that conclusion. *See Hicks*, 509 U.S. at 502. Thus, this Court need not pass judgment on BP's motion to strike.

BP has produced the interview evaluation form for the four interviewed candidates, a form which shows that the interviewers rated Rawls the highest and Wagenfuhr the lowest. Taken together, BP has met its burden by producing evidence that, if believed by the trier of fact, would establish that Rawls was the best qualified applicant.

Next, in order to survive summary judgment, Wagenfuhr must raise a genuine issue of material fact that BP's stated reason for not hiring her was a pretext for discrimination. There are "many ways that a plaintiff can show" pretext, *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1096 n.5 (5th Cir. 1994), but failure-to-hire cases generally fall into one of two categories. In the one, plaintiffs can show pretext by pointing to evidence showing they were "clearly better qualified" than the individuals ultimately hired; in the other, plaintiffs simply point to some other evidence showing that the defendants' reasons for not hiring them were false. *See Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002); *Little v. Tex. Dep't of Criminal Justice*, 177 S.W.3d 624, 632–33 (Tex. App. Houston [1st Dist.], pet. denied). This usually may be done by combining the plaintiff's prima facie case with evidence showing that the defendant's stated reason is false; however, there are occasions where a plaintiff's case is so weak that merely showing the defendant's explanation to be false will not defeat summary judgment. *See Reeves*, 530 U.S. at 147–48; *Toennies*, 47 S.W.3d at 481–82. "The ultimate

determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable fact finder could infer *discrimination*." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citing *Reeves*, 530. U.S. at 142).

Although Wagenfuhr largely ignores the "clearly better qualified" standard in order to attempt to show pretext by other means, this Court considers both methods in ruling on BP's motion for summary judgment. The "clearly better qualified" standard is a strict one; simply raising a genuine issue on whether two candidates are similarly qualified cannot raise an issue regarding pretext. *See Price*, 283 F.3d at 723. Wagenfuhr must point to evidence showing that her qualifications "leap from the record and cry out to all who would listen that [she] was vastly—or even clearly—more qualified for the subject job." *Id.* (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)). This she cannot do. Wagenfuhr's sole reason for believing she was the most qualified applicant—a belief she steadfastly repeated in her deposition while admitting she did not know the other candidates' qualifications—is the fact that she had worked at BP's warehouse for seventeen years. However, the law is clear that pretext is not established simply because an employer hires an applicant with fewer years of experience. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (holding that a plaintiff could not prove that he was clearly better qualified merely

because he had fourteen years of relevant experience while the candidate selected had only five years of relevant experience).

As noted, Wagenfuhr ignores the "clearly better qualified" standard and instead attempts to show pretext by other means. She argues that the interview was a "sham" and that BP never intended to hire her for the material analyst position because of its age discrimination.[4] To support this argument, she cites a number of alleged facts, focusing primarily on the following:

- Carrillo never told Wagenfuhr she was not qualified for the position but had stated in his deposition testimony that he did not believe her to be qualified;

- Wagenfuhr had previously held the title of Material Analyst;

- Two other material coordinators were promoted to material analyst positions without going through a bidding or interview process; and

- The interview panel was assembled by Carrillo and violated BP's policies.

None of these points create a genuine issue of material fact about pretext. Regarding Carrillo's beliefs, his uncontroverted deposition testimony and his December 2009 e-mail to a BP Human Resources employee point only to the fact that BP was, in fact, open to hiring Wagenfuhr even after the decision had been made to eliminate her contract position. After Wagenfuhr e-mailed him in December 2009, Carrillo e-mailed Human Resources and stated, "I plan to have a

---

[4] Pl.'s Resp. to Def.'s Mot. for Summ. J, ECF No. 23, 12.

meeting with her tomorrow to understand her desires. I did not believe that we could offer a role or negotiate a lower rate without actually opening the job as a posting?"[5]

Carrillo stated in his deposition testimony that, in hindsight, he believed that Wagenfuhr was not qualified, that her resume showed her to be unqualified, and that she would never have been selected as a finalist by Human Resources had she not worked for BP in the past. However, Carrillo—who had only started as warehouse superintendent a month before—had no knowledge of Wagenfuhr's qualifications or resume until the interview. While Wagenfuhr argues that Carrillo had invited her to interview all the while knowing he would not hire her, her allegation is unsupported by the record. Moreover, any secret beliefs Carrillo may have held about Wagenfuhr's qualifications are irrelevant to rebutting BP's justification that it selected Rawls because he was the most qualified applicant.

Wagenfuhr's second point fails on this latter ground as well. She alleges that she had actually held the title of material analyst at some point before she became a material coordinator. The record is unclear regarding her title during her time at BP, although it is clear that her duties did not change even if her title did.[6] Because all uncertainties must be resolved in Wagenfuhr's favor in ruling on

---

[5] Pl.'s Resp. to Def.'s Mot. for Summ. J, ECF No. 23 Ex. 7, E-mail from John Carrillo to Melanie Hughes, Dec. 15, 2009.

[6] Indeed, Wagenfuhr's testimony is in conflict on this point. In her deposition, she claimed to have been a material coordinator while employed at BP and did not recall having any other titles. However, in her affidavit, she claims that she had been a material analyst while at BP.

summary judgment, this Court will assume she held the title of material analyst at some point during her tenure. Yet, as BP's motion argues, even if this fact is assumed it goes only to proving her prima facie case by helping to show that she may have been qualified for the new position. It is irrelevant to raising a genuine issue regarding pretext because it does not undermine BP's position that it hired the most qualified applicant.

Wagenfuhr next makes an argument that is compelling at first glance but evaporates upon closer inspection. She states correctly that Carrillo converted the job titles of two other workers from material coordinator to material analyst without having those workers go through an interview or bidding process. However, in order to use this fact to show pretext, Wagenfuhr must show that she was similarly situated to the other two workers. *See Hernandez v. Yellow Transp. Co.*, 670 F.3d 644, 659 (5th Cir. 2012). She was not. Wagenfuhr was a contractor, while the other two workers were already BP employees. As the record establishes, Carrillo was forbidden from hiring Wagenfuhr without conducting a bidding process but could promote the other two workers at will. Carrillo's different treatment of the other two workers is irrelevant to showing that BP's stated reason for not hiring Wagenfuhr was a pretext.

Finally, Wagenfuhr claims that the interview itself was improper because it violated BP's internal policies and because Carrillo did not mark his score sheet.

Wagenfuhr bases this claim on an affidavit submitted by her friend and former supervisor, Roberson. Roberson's affidavit claims that the panel was impermissibly understaffed because one of the interviewers was out sick.[7] Her affidavit also claims that the panel was improper because one of the interviewers was on "probation" and thus ineligible to conduct interviews.

For summary judgment purposes, this Court must resolve the question of the panel's propriety in favor of Wagenfuhr; however, neither the propriety of the panel's composition nor the alleged unmarked score sheet have any bearing on whether BP's reason for not hiring her was a pretext for discrimination. The supposedly ineligible interviewer was on the panel for each applicant. As for the absent interviewer, Wagenfuhr identifies no evidence indicating that she was not actually sick. Moreover, those present for Wagenfuhr's interview rated her as the lowest of the four interviewed applicants.

Pretext evidence is that which tends to cast doubt on the nondiscriminatory explanation the employer offers. *See, e.g.*, *Reeves*, 530 U.S. at 144 (finding evidence of pretext where the plaintiff presented evidence that he was competent at bookkeeping because that directly undermined the employer's nondiscriminatory rationale that poor bookkeeping rather than age discrimination was the basis for

---

[7] Although BP has filed a motion to strike part of Roberson's affidavit on hearsay grounds, this Court considers it. Roberson's affidavit is based in part on a statement allegedly made by a BP Human Resources employee. As an agent of BP, this employee's statement is admissible. *See* Fed. R. Evid. 801(d)(2)(D).

termination). That necessary link between the pretext evidence and the offered nondiscriminatory rationale is missing in this case. Given BP's justification that Rawls was the most qualified applicant, evidence of pretext would have to cast doubt on BP's claim that Rawls was highly qualified. The issues Wagenfuhr raises about possible irregularities with the interview process have nothing to do with whether BP chose the most qualified applicant over Wagenfuhr and 184 other rejected applicants.

Wagenfuhr has identified no evidence of pretext or any other "evidence demonstrating that discrimination lay at the heart of," *Price*, 283 F.3d at 720, or was even a motivating factor in, BP's decision not to select her out of the large applicant pool. Accordingly, BP's Motion for Summary Judgment (Docket Entry No. 21) must be, and is, **GRANTED**. BP's Motion to Strike Portions of the Affidavit of Nancy Roberson (Docket Entry No. 25) is **DENIED**. BP's Motion to Strike Portions of the Affidavit of Ann Wagenfuhr (Docket Entry No. 26) is **DISMISSED AS MOOT**.

SIGNED this 29th day of June, 2012.

_____
Gregg Costa
United States District Judge